```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

SHIRELY ARNOLD,                )
                               )
            Plaintiff,         )
                               )
v.                             )     Case No. CIV-13-135-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

### REPORT AND RECOMMENDATION

Plaintiff Shirley Arnold (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on August 28, 1949 and was 62 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant has worked in the past as a secretary, mail sorter, and receiving clerk. Claimant alleges an inability to work beginning April 29, 2010 due to limitations resulting from emphysema, arthritis, dizzy spells, severe headaches, heart problems, chronic obstructive pulmonary disease ("COPD"), and

problems with her him, knees, neck, and back.

## Procedural History

On November 8, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 22, 2012, an administrative hearing by video was held before Administrative Law Judge ("ALJ") Lantz McClain. On April 6, 2012, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on February 5, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of light work including her past relevant work as a secretary.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly analyze the record; (2) failing to make findings regarding pain; (3) failing to give controlling weight to a treating

physician; and (4) engaging in a faulty credibility analysis.

**Evaluation of the Medical Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the spine, history of sinus bradycardia and COPD in a smoker. (Tr. 22). The ALJ also found Claimant retained the RFC to perform light work in that she could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk for at least 6 hours in an 8 hour workday, and could sit for at least 6 hours in an 8 hour workday, all with normal breaks. After consultation with a vocational expert, the ALJ also found Claimant retained the RFC to perform her past relevant work as a secretary. (Tr. 27).

Claimant contends the ALJ erred by making several false statements in his decision. Claimant states the ALJ erroneously stated she took no medication for depression when she took Alprazolam since 2007. The medical record, however, indicates this medication was prescribed for stress and anxiety and not for depression as Claimant urges. (Tr. 198). Claimant also finds inconsistency in the statement made by the ALJ in his decision that "[H]er medications for depression do not help much" when he also stated Claimant was not taking medication for depression. This statement appears to be a recitation of Claimant's testimony rather

5

than a finding by the ALJ. As such, this Court perceives no inconsistency in the ALJ's findings on medication for depression.

Claimant next asserts the ALJ improperly concluded from a February 28, 2011 physical examination that the "examination revealed no abnormal objective signs or findings." (Tr. 25). Claimant states the examination revealed hyperlipidemia, psoriasis, neck pain and headache, and sinusitis with headache and neck pain and that these findings belie the ALJ's conclusion. (Tr. 436). The physical examination portion of the report contains no objective abnormal findings. This statement is true. The remainder of the report from the Veterans Administration clinic indicates various conditions requiring treatment beyond the physical exam. This Court initially finds a statement such as this, even if inaccurate, would not warrant reversal. More importantly, the statement is not inaccurate in this circumstance.

A statement Claimant dramatically characterizes as "the most preposterous of them all," the ALJ found that "the claimant has only had substantial gainful activity in 2004 and 2005." Claimant mischaracterizes and selectively quotes the ALJ's decision. He, in fact, stated that "[t]he Administrative Law judge notes the earnings record reflects that in the last 15 years, the claimant has only had substantial gainful activity in 2004 and 2005." (Tr.

26). Not even Claimant indicates in her briefing that she has worked more during the framed time period, instead referring to her work history in 1967 and 1978. Simply put, the statement is not erroneous nor "preposterous."

Claimant also seeks reversal because the ALJ referenced the medical evidence as "relatively weak." (Tr. 26). Claimant then defines "weak evidence" in Social Security cases as a medical record containing less than 50 pages. Finding her medical record apparently strong, Claimant boasts a record of 375 pages with x-rays, MRIs, referrals and other treatment. This argument is barely worthy of print. Surely it cannot be argued that the number of pages in a medical record is determinative of the relative weakness or strength of the evidence. But Claimant makes such an assertion in this case. The ALJ's statement regarding his opinion of the strength of the evidence is a subjective characterization which does not constitute error.

Claimant also finds the ALJ's statement that "[i]t would be reasonable to assume that if the claimant were in the debilitating pain as alleged, she would have sought or been referred to a specialist for further evaluation." (Tr. 26). Claimant then states she was referred to an internist and heart specialist. This Court does not perceive that the ALJ was referring to just any

7

specialist but rather a pain management specialist since he was discussing Claimant's pain in his decision. This statement does not inaccurately reflect the facts in the case.

**Pain Findings (Credibility Determination)**

Claimant contends the ALJ made no findings on pain despite also concluding Claimant suffered from degenerative disc disease as a severe impairment. The ALJ's assessments of pain are subjective in nature which are addressed as a part of his credibility determination. 20 C.F.R. § 404.1529.

The ALJ determined that Claimant's statements of constant pain despite taking medication were less than credible. (Tr. 24, 26). It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

8

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.).

On October 9, 2008, Claimant underwent an MRI after complaining of neck pain with upper extremity radiculopathy symptoms. The MRI examiner found Claimant suffered from mild to moderate degenerative disc disease changes at the lower cervical spine, most significantly at C4-C5 and C5-C6; mild spinal stenosis with left lateral recess stenosis at C4-C5; minimal to mild spinal stenosis at C5-C6 with right lateral recess stenosis; straightening to moderate reversal of normal cervical lordosis, possibly associated with patient positioning versus muscle spasm. (Tr. 379).

On March 22, 2011, Claimant was examined by Dr. Maggie Law. Dr. Law noted Claimant was "not in acute distress." She did note Claimant experienced neck pain and headaches but that she received

9

a Toradol shot. Claimant's motor power and strength was 5/5. (Tr. 436).

The ALJ also found Claimant's statements regarding her daily activities were in conflict. (Tr. 26). She testified that she is unable to cook, perform chores, or go shopping while reporting to her treating physician that she was able to perform household chores. (Tr. 42, 573-75).

In light of the cited conflicts and inconsistency in the evidence, the ALJ's credibility assessment was acceptable.

### Evaluation of Treating Physician's Opinion

Claimant's treating physician, Dr. Lawrence C. Green, provided a Physical Residual Functional Capacity Questionnaire dated March 30, 2010. Dr. Green opined that Claimant suffered from severe debilitating pain with radiation to the upper extremities. (Tr. 365). He found Claimant could stand/walk and sit for less than two hours in an 8 hour workday. She would require periods of walking around during the workday every 15 minutes for 15 minutes. (Tr. 366). Dr. Green interjected a written comment that Claimant "cannot work." She would "constantly" require unscheduled breaks. He also found Claimant could lift and carry under 5 pounds and could never twist, stoop, crouch, climb ladders, or climb stairs. Claimant would also experience significant limitations in her

ability to repetitively reach, handle, or finger. Curiously, he also concluded Claimant could use her hands, finger, and arms, "100%" of the time for grasping, turning, twisting objects, in fine manipulation, and reaching. (Tr. 367). When the form required Dr. Green to state how many days per month Claimant was likely to be absent from work as a result of her impairments, he inserted "unable to work." (Tr. 368).

The ALJ afforded Dr. Green's opinion "little weight" because the medical evidence was not consistent with the severity of the restrictions he found. He also noted that Dr. Green usurped the ALJ's role in making disability determinations. (Tr. 25).

Claimant appears to argue that Dr. Green is most qualified to render a medical opinion in this case because his records represent 137 pages of the record with only another 83 pages from other sources. The number of pages in the record is of no moment to the determination of the weight to be provided to a treating physician's opinion. It should be expected that the treating physician's records would dominate the overall medical record.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

11

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §

404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ noted that Claimant was treated conservatively with medication and was not referred to a specialist or for physical therapy. Claimant was able to perform her chores. The MRI revealed only mild to moderate degeneration.

On February 28, 2011, Dr. J. Marks-Snelling completed a Physical Residual Functional Capacity Assessment on Claimant. He determined Claimant could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday and engage in unlimited pushing and pulling. (Tr. 426). This assessment was reviewed and affirmed on July 6, 2011 by Dr. Luther Woodcock. (Tr. 556). Claimant asserts that Dr. Marks-Snelling's report is stale since her condition worsened after he authored it. The report was made after Claimant's date of last insurance and, therefore, is

relevant to this Court's determination.  Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991).

Given the totality of the medical evidence, Dr. Green appears to have overstated the level of restriction experienced by Claimant.  The ALJ did not err in failing to give his opinion controlling weight.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of August, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE